UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LUIS ALBERTO MENDOZA-ALMENDAREZ,
Reg. No. 76696-004
    Petitioner,

v.                                  Case No. 5:21cv25-RV-HTC

WARDEN MACKELBURG,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Luis Mendoza-Almendarez ("Petitioner" or "Mendoza-Almendarez"), a federal inmate at the Federal Correctional Institution in Marianna, Florida, filed a pro se petition under 28 U.S.C. § 2241 challenging a prison disciplinary action, resulting in the loss of Good Time Credit. ECF Doc. 1. The matter was referred to the undersigned Magistrate Judge for preliminary screening and preparation of a report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). Upon consideration of the petition, ECF Doc. 1, the Respondent's responses, ECF Docs. 7 and 13, and Petitioner's rebuttals, ECF Docs. 12 and 16, the undersigned recommends this action be denied and dismissed, as the petition is without merit.

I.      BACKGROUND and SUMMARY OF THE RECORD

On August 10, 2020, while Mendoza-Almendarez was housed at FCC Yazoo City, he was charged in incident report #3423840 ("IR") with fighting (prohibited act code 201). ECF Doc. 7-1 at 19-20. According to the IR, Officer R. Spearman observed two inmates, Mendoza-Almendarez and "AM"[1], aggressively swinging with closed fists at each other in the common area of M-1. *Id.* at 19. Officer Spearman also saw AM hit Mendoza-Almendarez in the head with a "lock in a sock"[2]. *Id.* The two inmates fell to the ground and began to "aggressively punch and grab each other's clothing." *Id.* Spearman directed the inmates to stop and had to use two 2-second blasts of chemical spray to deescalate the situation. *Id.*

The following day, August 11, 2020, Investigator J. Agard delivered a copy of the IR to Mendoza-Almendarez and advised him of his right to remain silent. ECF Doc. 71-1 at 20. J. Agard noted Petitioner understood his rights and the contents of the IR. *Id.* Mendoza-Almendarez stated, "No comment," and did not provide any evidence. *Id.*

After conducting an investigation, Investigator Agard found the IR to be justified, but erroneously stated, "there is no (sic) evidence to support the claim that

---

[1] The other inmate involved in the incident was Alfredo Mendoza. ECF Doc. 7-1 at 19.
[2] The weapon was a padlock attached to a white towel. *See* ECF Doc. 13-3 at 22.

Case No. 5:21cv25-RV-HTC

the above inmate was in a fight." *Id.* Investigator Agard forwarded the IR to the Unit Disciplinary Committee ("UDC") for further disposition.

On August 14, 2020, Mendoza-Almendarez appeared before the UDC. ECF Doc. 7-1 at 21. J. Boone read Petitioner his rights, including his right to call witness, present a statement, have a full time member of the staff represent him, and the right to appeal the disciplinary hearing officer's ("DHO") decision. *Id.* Petitioner signed an acknowledgement of those rights. *Id.* At the hearing, Petitioner stated "It was self-defense. I was trying to defend myself." *Id*. The UDC referred the IR to the DHO based on the severity of the report but made no recommendation as to punishment. *Id.*

On the same day, Mendoza-Almendarez also signed a "Notice of Disciplinary Hearing Before the (DHO)". ECF Doc. 7-1 at 5. He indicated on the form he did not wish to have either a staff representative or witnesses present. *Id*.

On August 18, 2020, DHO C. Grider conducted the Disciplinary Hearing. ECF Doc. 17-1 at 1-3. According to the DHO Report, Mendoza-Almendarez admitted to receiving the IR and understanding it. *Id.* He also admitted to understanding his rights, requesting no staff representative, and no witnesses. *Id.* After admitting he was ready to proceed, Petitioner denied guilt. Petitioner stated "I deny it. I blacked out after [AM] hit me. It was 'survival extinct' [sic]." *Id.* at 1.

At the conclusion of the hearing, the DHO found the act was committed as charged. ECF Doc. 17-1 at 2. In reaching this decision, the DHO relied on Officer Spearman's written statement, as well as the Health Services Clinical Encounters and Photograph Sheets showing injuries to both Petitioner's head and AM's knees. *Id.* The DHO's sanction was the disallowance of 27 days of Good Conduct Time ("GCT"), 7 days of disciplinary segregation, and 3 months of commissary restriction. *Id.* A copy of the DHO report was delivered to Mendoza-Almendarez on the same date, wherein Mendoza-Almendarez was, once again, advised of his rights to appeal the DHO's decision within twenty (20) days under the Administrative Remedy Procedure. *Id.* at 3.

In the instant petition, Mendoza-Almendarez raises the following challenges to the DHO decision: (1) his actions were in self-defense; (2) the DHO relied on an inadequate written record of the incident when he should have examined video surveillance to determine how the incident began; (3) the DHO relied only on the IR and not the investigation report which allegedly showed Mendoza-Almendarez was the victim of an assault; and (4) the DHO did not base his decision on substantial evidence because he did not review the video surveillance. ECF Doc. 1 at 3-4. Mendoza-Almendarez asks this court to order the BOP to expunge the incident report and reinstate his good conduct time. *Id.* at 6. As to each of the grounds for relief he states that he filed an appeal to the Southeast Regional Office on October

1, 2020 and an appeal to the Office of the General Counsel on December 13, 2020, but he received no response. *Id.* at 3-5.

Respondent argues the petition should be denied because (1) Mendoza-Almendarez did not exhaust his administrative remedies before filing the petition, and (2) the BOP afforded Petitioner the due process required and did not abuse its discretion in imposing the disciplinary sanctions of which Mendoza-Almendarez complains.

## II.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

While exhaustion is not a jurisdictional issue, a petitioner seeking relief under § 2241 must first exhaust available administrative remedies. *See Santiago–Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015) (the judge-made requirement of exhaustion, while not jurisdictional, is still a requirement); *Shorter v. Warden*, 803 Fed. App'x 332, 336 (11th Cir. 2020) (citing *Santiago-Lugo*); *United States v. Leverette*, 721 F. App'x 916 (11th Cir. 2018).  To properly exhaust administrative remedies, a petitioner must comply with the applicable agency's deadlines and procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (addressing the exhaustion requirement in the Prison Litigation Reform Act).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct

its own errors.'" *Green v. Sec'y, Dep't of Corr.,* 212 F. App'x 869, 871 (11th Cir. 2006) (quoting *Alexander v. Hawk,* 159 F.3d 1321, 1327 (11th Cir. 1998)).  Also, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford,* 548 U.S. at 93 (citation omitted).

The agency here is the Federal Bureau of Prisons, which provides an internal grievance procedure for its inmates.  *See* 28 C.F.R. § 542.10, *et seq.*  A federal inmate must "first present an issue of concern informally to staff" who must "attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."  28 C.F.R. § 542.13(a).  If the informal resolution procedures fail to resolve the issue, generally a prisoner must complete a three-step sequential formal process.

As to the formal grievance procedures, an inmate typically must first submit a formal Request for Administrative Remedy on the BP-9 form to the Warden of the institution where the inmate is confined within twenty (20) days of the date on which the basis for the Request occurred.  28 C.F.R. § 542.14(a).  If the inmate is not satisfied with the Warden's response, he may submit an appeal on the BP-10 form to the Regional Director within twenty (20) days of the Warden's response.  28 C.F.R. § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's

response, he may submit an appeal on the BP-11 form to the General Counsel at the Central Office within thirty (30) days of the Regional Director's response. *Id.* This is the final administrative appeal.

Inmates such as Mendoza-Almendarez who are appealing DHO sanctions may bypass the formal grievance procedure (completing the BP-9 form) and submit their initial appeal directly to the Regional Director. 28 C.F.R. § 542.14(d)(2). The deadline for doing so is twenty (20) days. *See* 28 C.F.R. § 542.14(a) (noting a deadline of 20 calendar days for submission of a formal Request "*on the appropriate form (BP-9)*"). As stated above, Petitioner was advised of this 20-day appeal deadline in writing. *See* ECF Doc. 7-1 at 3, 22. As with an ordinary appeal, an inmate who is dissatisfied with the Regional Director's response may appeal to the General Counsel's Office within thirty (30) days of the Regional Director's Response.

The DHO Report was delivered to Mendoza-Almendarez on August 18, 2020. Thus, his appeal to the Regional Director was due by September 7, 2020. It is undisputed, however, that Petitioner did not file an appeal until October 1, 2020. ECF Doc. 1 at 16.

In his rebuttal, Mendoza-Almendarez claims for the first time that the delay in filing his BP-10 to the regional office was due to factors beyond his control. ECF Doc. 12 at 2. He notes that during this time period the inmates were quarantined due

to Covid-19, and he did not have ready access to counselors or others who could provide him with the proper forms. *Id.* Mendoza-Almendarez asserts he did not receive the BP-10 form until October 1, 2020, and he submitted it the same day. *Id.* He also argues he was consistently told that the IR would be expunged from his disciplinary record and thus there was no need to file a BP-10. *Id.* Mendoza-Almendarez also states that although 28 CFR § 542.18 provides that the Regional Director should respond within thirty (30) days, to allow for mailing and holidays and Covid-19 related delays, he waited until December 13, 2020 to file his BP-11, and then filed his petition with this court on January 19, 2021.

To the extent Petitioner seeks to argue administrative procedures were not available to him because of COVID-19, the undersigned finds this argument to be unavailing because Petitioner could have sought an extension from the BOP. *See* 28 C.F.R. § 542.14(b). Regardless, the Court need not deny the petition for failure to exhaust because, as discussed below, the undersigned finds the petition fails on its merits because Petitioner was afforded sufficient due process with regard to the disciplinary action. *See Santiago-Lugo*, 785 F. 3d at 475 (courts may skip over the exhaustion issue "if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question") (*citing Granberry v. Greer*, 481 U.S. 129, 131 (1987) ("[T]here are some cases in which it is appropriate for an

appellate court to address the merits of a habeas corpus petition notwithstanding the lack of complete exhaustion.") (quotation marks omitted)).

## III. THE PETITION FAILS ON ITS MERITS

To state a cognizable claim for the denial of due process in connection with prison discipline, a prisoner must show a protected liberty interest of which he was deprived without minimum procedural protections. *Dean-Mitchell v. Reese*, 837 F.3d 1107, 1112 (11th Cir. 2016) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974)). A federal inmate has a liberty interest in earned good conduct time (GCT) credits and, accordingly, must receive due process before those credits are revoked as a result of prison discipline. *See Wolff*, 418 U.S. at 557-58. According to the Eleventh Circuit, the required due process includes the following::

> (1) advance written notice of the charges against the inmate (in this case, the Incident Report); (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action (here, the DHO report). *Id*. at 563-67 . . . ; *O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011).

*Dean-Mitchell*, 837 F.3d at 1112. Those requirements were met in this case.

As reflected in the attachments to Respondent's answer and summarized above, Mendoza-Almendarez received the requisite procedural due process protections during the disciplinary process in this case. Specifically, the record reflects that Mendoza-Almendarez received a copy of the incident report and

Case No. 5:21cv25-RV-HTC

narrative information about the investigation on August 11, 2020.  ECF Doc. 7-1 at 19-20.  He received advance notice of the disciplinary hearing before the DHO on August 14, 2020  (ECF Doc. 7-1 at 5), and he signed a form indicating he was advised of his rights at a disciplinary hearing (ECF Doc. 7-1 at 22).

The rights of which he was advised included:  receiving a written copy of the incident report/charges, the right to have a staff representative, the right to call witnesses and present documentary evidence, the right to present a statement or remain silent, the right to know of the DHO's decision and the facts supporting same as well as a written copy thereof, and the right to appeal the DHO's decision pursuant to the Administrative Remedy Procedure within 20 calendar days.  ECF Doc. 7-1 at 22.  Mendoza-Almendarez affirmatively indicated he did not want to have either a staff representative or witnesses.  ECF Doc.  7-1 at 5.  Finally, a copy of the DHO report, which included an explanation of his appellate rights, was provided to him on August 18, 2020.  ECF Doc. 7-1 at 3.  Thus, the record shows Petitioner was provided with initial due process.

However, the inquiry does not end there.  The U.S. Supreme Court has held that "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record."  *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985).  As explained by the Court, "the

relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-456 (emphasis added); *see, e.g.*, *Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994) (explaining that federal courts should not be "judging and reweighing the evidence presented in a prison disciplinary hearing"; rather, the "role of this court is to determine whether an inmate receives the procedural protections provided by *Wolff* and whether 'some evidence' exists which supports the hearing officer's determination"); *Tedesco v. Sec'y, Dep't of Corr.,* 190 F. App'x 752, 758 (11th Cir. 2006) (upholding prison disciplinary decision because "some evidence" supported the prison's decision and inmate's due process rights as set forth in *Wolff* were not otherwise violated). The Supreme Court noted that "[r]equiring a *modicum* of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." *Hill*, 472 U.S. at 455 (emphasis added). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* at 456. Thus, the threshold amount of evidence required for this Court to uphold a prison disciplinary decision is quite low.

    In this case, the DHO's conclusion that Mendoza-Almendarez was guilty of the charge of fighting was supported by Officer Spearman's written statement about

his observations of the altercation, including the need to use chemical agents to separate the two fighting men. ECF Doc. 7-1 at 2. This statement alone is sufficient to constitute "some" evidence in the record to support the DHO's finding. *See Anderson v. FCC Coleman-USP II, Warden,* 649 F. App'x 730, 731 (11th Cir. 2016). The DHO's conclusion was also supported by the Health Services Clinical Encounters and Photograph Sheets reflecting injuries not only to Petitioner but also to AM. ECF Doc. 7-1 at 2.

Mendoza-Almendarez claims he acted in self-defense. He has submitted the affidavits of three (3) inmate witnesses in support of this position. ECF Doc. 16 at 3-4, 6-9. He also argues he did not call witnesses or attempt to offer any evidence because he was told by SIS Agent Del Valle, "he and his boss, Lt. Flemming, had reviewed the videotape of the incident," acknowledged Petitioner had been assaulted, and assured Petitioner the incident would be expunged. ECF Doc. 12 at 4. Petitioner further claims that he discovered Del Valle had lied to him at the hearing and requested the DHO call Del Valle as a witness and that the videotape of the incident be produced, but the DHO denied his requests. *Id.* at 5.

Even accepting those facts as true, Petitioner is still not entitled to relief. First, as Petitioner acknowledges, incarcerated inmates do not have a constitutional right to raise claims of self-defense as a defense to prison disciplinary charges. *See Holston v. Sec'y, Fla. Dep't of Corr.,* No. 8:17-CV-796-T-02TGW, 2020 WL

1891300, at *4 (M.D. Fla. Apr. 16, 2020) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994); *Walker v. Sec'y, Dep't of Corrs.*, 2012 WL 3206776, at *8 (N.D. Fla. Apr. 23, 2012) (holding that even if a disciplinary team had prohibited the inmate from presenting a defense of self-defense, the failure to do so would not have been a violation of his due process rights (citing *Rowe*)).

Second, what the witnesses say in their statements and what Del Valle reported as being in the videotape[3] is consistent with Officer Spearman's observations. That is, there is no dispute that AM hit Petitioner with a lock in the sock. Regardless of that initial contact, however, it is also not disputed that both men were seen punching each other and fighting on the ground. Also, neither man ceased fighting even after being directed to do so. Thus, as stated above, regardless of other evidence which may have been available, there was clearly evidence to support the DHO's finding that Petitioner was guilty of fighting.

## IV. CONCLUSION

As stated above, the role of this Court is not to re-examine the entire record, independently assess witness credibility, or weigh the evidence. *Hill*, 472 U.S. at 455-56; *Young*, 37 F.3d at 1460; *Tedesco*, 190 F. App'x at 758. Because Petitioner

---

[3] Del Valle investigated the incident to determine whether AM should be released to the general population. ECF Doc. 13-1 at 1-5. In his investigative report, Del Valle states the video "shows inmate [AM] striking [Petitioner] in the head with a pad lock inside a white towel multiple times." *Id.* at 4. It also shows both inmates "in a fighting stance." And Petitioner "was observed swinging at [AM], with closed fist while pulling his hair." *Id.* "Both inmates were observed fighting each other while on the floor". *Id.*

Case No. 5:21cv25-RV-HTC

was provided due process *and* there was evidence to support the DHO's decision, that decision must remain undisturbed. Mendoza-Almendarez is not entitled to relief.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition under 28 U.S.C. § 2241 (ECF Doc. 1) be dismissed.

2. That the clerk be directed to close the file.

At Pensacola, Florida this 12th day of April, 2022.

*s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No. 5:21cv25-RV-HTC